# Supreme Court of the Navajo Nation

---

**Eugene Kirk, Gililand Damon,
and Reynold R. Lee,
Petitioners/Appellants,**
v.
**Office of Navajo Labor Relations,
Respondent/Appellee.
Decided November 16, 1998**

---

## OPINION

Before YAZZIE, Chief Justice, AUSTIN and CADMAN, Associate Justices.

Patrice M. Horstman, Esq., Flagstaff, Arizona, for the Petitioners/Appellants; and Marcelino R. Gomez, Esq., Navajo Nation Department of Justice, Window Rock, Navajo Nation (Arizona), for the Respondent/Appellee.

Opinion delivered by AUSTIN, Associate Justice.

The Appellants, three compliance officers of the Office of Navajo Labor Relations, filed a complaint with the Navajo Nation Labor Commission alleging violations of the Navajo Preference in Employment Act, 15 N.N.C. §§ 601-619 (1995 ed.), in the hiring of the director of the Office. The Commission dismissed the complaint for failure to exhaust administrative remedies; specifically, for failure to first file the employment charge forms with the Office of Navajo Labor Relations. On appeal, the Appellants seek exemption from this initial step, claiming the remaining compliance officers have conflicts of interests and lack impartiality.

I

The Appellants, Eugene Kirk, Gililand Damon, and Reynold Lee, are employed as compliance officers in the Office of Navajo Labor Relations ("ONLR"). When this case began, the ONLR employed five compliance officers to monitor and enforce the Navajo Preference in Employment Act ("NPEA"). On January 31, 1997, the five compliance officers filed a grievance with the Department of Personnel Management disputing the recruitment, selection, and hiring of Timothy Joe as ONLR director. When the grievance proceedings were not resolved to the Appellants' satisfaction, they filed their employment charge forms and a complaint against the ONLR with the Navajo Nation Labor

Commission ("Commission") on August 21, 1997. The NPEA requires that NPEA matters start with the ONLR.

The complaint and charge forms alleged that the process used to hire Timothy Joe, as director of ONLR, violated the NPEA. The alleged violators are the director of the Division of Human Resources, the director of the Department of Personnel Management, and two compliance officers of the ONLR.

Before filing with the Commission, Appellant Eugene Kirk called the two remaining compliance officers, Irwin Delmar and Harrison Bia, to see if either would file the Appellants' complaint. Both officers stated they would not accept the complaint or investigate the allegations because of their earlier involvement in the grievance process. The Appellants did not attempt to mail or hand-deliver the complaint to any ONLR office for filing. Appellant Kirk knew how to file charges against the ONLR with the ONLR, as he had done so previously.

On February 12, 1998, the ONLR filed a motion asking the Commission to dismiss the Appellants' complaint for failure to exhaust their administrative remedies. The Commission granted the motion on February 28, 1998. The Commission found that Appellant Kirk's telephone calls did not qualify as an attempt to file the complaint with the ONLR, and ruled that the Appellants had not exhausted their administrative remedies.

## II

The NPEA sets forth the statutory requirements for initiating, processing, and resolving charges alleging violations of its provisions. The ONLR is responsible for monitoring and enforcing the NPEA. 15 N.N.C. § 610(A) (1995 ed.). The ONLR becomes involved in NPEA matters when either an individual files a charge ("Individual Charge"), or the ONLR, on its own prerogative, files a charge ("ONLR Charge"). *Id.* § 610(B)(1).

Proceedings on an Individual Charge begin when the complainant files an employment charge form containing the alleged NPEA violations with any ONLR office. *Id.* § 610(B)(3). The Appellants contend that their remedies before the ONLR were exhausted when the two remaining compliance officers were called and they refused to accept the complaint. Furthermore, the Appellants argue that no ONLR office was available to file their complaint after officers Delmar and Bia rebuffed them. We agree with the Commission that telephone calls do not qualify as an attempt to file a charge with the ONLR. The Appellants did not physically appear at an ONLR office to file their papers or, alternatively, mail their papers to the ONLR for filing. We affirm the Commission's finding that the Appellants simply did not make any effort to file their complaint with the ONLR.

The Appellants cite internal office practice and procedure to argue that only compliance officers have authority to file employment charge forms and, normally, the officer who files the form must investigate the alleged violations. According to the Appellants, this means that no other compliance officer was

available at any ONLR office to file the compliant and investigate after officers Delmar and Bia refused to get involved. We do not agree.

The Appellants' office practice and procedure may promote convenience, but they unduly constrict the law. The receipt of an employment charge form and its subsequent filing are nothing more than ministerial acts, which the law does not restrict to compliance officers. The law is clear on this point: "Date of Filing. Receipt of each Individual Charge shall be acknowledged by the dated signature of *an ONLR employee* which shall be deemed the date on which the Individual Charge is filed." *Id.* § 610(A)(4) (emphasis added). Presumably, any ONLR employee may receive and file an employment charge form. These ministerial acts could have been performed by either officer Delmar or Bia without tainting himself with impropriety.

The Appellants acknowledge that the law requires complainants to file their employment charges with the ONLR first. They claim, however, that in this case it would be futile to file with the ONLR for three reasons: 1) due to officers Delmar and Bia's conflicts of interests, the ONLR does not have an independent compliance officer left to investigate their charges; 2) the ONLR, as the agency being challenged in this action, cannot investigate itself; and 3) if the investigation is done by the ONLR, it would not rule against its own interests. We address these concerns and suggest solutions below.

The Appellants correctly state that the Navajo Nation Ethics in Government Law, 2 N.N.C. §§ 3741-3793 (1995 ed.), prohibits officers Delmar and Bia from investigating charges against the ONLR. That law prohibits a government employee from conduct which creates an appearance of:

1. Using public office for personal gain;
2. Giving preferential treatment to any special interest organization or person;
3. Impeding governmental efficiency or economy;
4. Losing or compromising complete independence or impartiality of action;
5. Making a government decision outside official channels; or
6. Adversely affecting the confidence of the people in the integrity of the government of the Navajo Nation.

*Id.* § 3745(B)(l)-(6). Because officers Delmar and Bia were involved in grievances that also formed the Appellants' complaint, they have conflicts of interests which bars them from investigating the Appellants' charges.

While the ethics law prevents conflicts of interests, it also provides solutions that the parties can use. Section 3748 of the ethics law addresses the three problems the Appellants have presented and we use it here to set forth guidelines for the parties. After charges are filed with the ONLR, officers Delmar and Bia, or any other ONLR compliance officer who sees a conflict of interest, would explain the potential conflict in writing to their supervisor and to the Ethics and Rules Committee of the Navajo Nation Council. *Id.* § 3748(C). The Committee would then assign the investigative functions to an individual who does not have a conflict of interest. *Id.* The Committee can provide guidelines to ensure a fair

and independent investigation.

The Appellants' final argument is that the Commission lacks jurisdiction over any conflicts of law issues, because it does not have "power or authority to resolve conflicts in existing laws" and it cannot fashion a "proper remedy" for the Appellants. The Appellants contend that only the courts can decide conflicts of law issues. The alleged conflicts are between those NPEA laws that require the ONLR and the Commission to handle employment charges alleging NPEA violations and the Ethics in Government Law which prohibits employee conflicts of interest. The guidelines we have set forth above should eliminate these alleged conflicts. The Appellants are entitled to have their charges investigated by an impartial investigator appointed by the Ethics and Rules Committee. Moreover, we have no reason to suspect that the Commission would handle the Appellants' complaint without comporting with due process standards.

The Appellants do not say what is their "proper remedy," but clearly, the Commission has the power to issue any of a host of remedial orders, including "injunctive relief" and "mandated corrective action to cure the violation within a reasonable period of time." *Id.* § 612(A)(1). We are not persuaded that the administrative process would not fashion a proper remedy for the Appellants. We cannot find a justifiable reason to exempt the Appellants from the administrative process.

This Court has recognized and followed the doctrines of primary jurisdiction and exhaustion of administrative remedies. *Navajo Skill Center v. Benally*, 5 Nav. R. 93, 96 (1986). These doctrines permit the agency with expertise to act first and to stay the court's hand until the agency has completed its process. In this case, the matters in the Appellants' complaint are within the authority of the ONLR and the Commission. The administrative steps should have been followed.

Accordingly, the decision of the Navajo Nation Labor Commission is affirmed.